**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| (1) WALIDA NOWLIN, as Personal Representative of the Estate of JERRY NOWLIN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>(1) CITY OF OKLAHOMA CITY, OKLAHOMA, a municipal corporation;<br>(2) CHRISTOPHER GRIMES; and<br>(3) JOSHUA CASTLEBURY,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CIV-17-194-PRW |

## ORDER

Defendants Christopher Grimes and Joshua Castlebury motion the Court for summary judgment in their favor as to the sole excessive force claim asserted against them (Dkt. 69). The officers claim that summary judgment is appropriate because undisputed facts demonstrate that they are entitled to qualified immunity and that Plaintiff's claims otherwise fail. Plaintiff disputes both assertions. The Court agrees; fact issues preclude summary judgment.

### *Background*

Officer Castlebury and Officer Grimes, Oklahoma City police officers working as part of a gang task force, were patrolling on December 7, 2014, when they observed a car driven by Jerry Nowlin speed and make an illegal turn. The officers turned on their lights and siren and attempted to stop the car, but Nowlin did not stop. He instead drove to an

apartment complex and bailed out of his vehicle while it was still moving and ran through an opening in the fence surrounding the complex and continued running through the complex. The officers stopped their car and pursued on foot. During this foot pursuit, both Officer Castlebury and Officer Grimes fired multiple gunshots at Jerry Nowlin. Two of these shots struck Jerry Nowlin, one in the leg and one in the head. Nowlin died as a result. What precipitated the shooting and the exact circumstances of the shooting itself are at the core of this dispute.

Jerry Nowlin's personal representative, Walida Nowlin, brought this case pursuant to 42 U.S.C. § 1983 alleging that Officers Castlebury and Grimes violated Nowlin's constitutional right to be free of excessive force.[1] Officers Castlebury and Grimes argue that (1) they enjoy qualified immunity for their actions, and (2) even if they don't, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

## *Qualified Immunity*

### *Standard of Review*

The typical summary judgment analysis dictated by Fed. R. Civ. P. 56 is altered when a defendant asserts the defense of qualified immunity. Qualified immunity shields Officers Castlebury and Grimes from suit and liability under 42 U.S.C. § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a

---

[1] Nowlin also asserts various other claims against co-defendant City of Oklahoma City, but those are not at issue in this motion.

reasonable person would have known."[2] When the defense of qualified immunity is invoked, the plaintiff thus must demonstrate "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so (2) that the right was clearly established at the time of the defendant's unlawful conduct."[3] If the plaintiff fails to make either showing, the defendant is entitled to qualified immunity.[4] But "[i]f the plaintiff indeed demonstrates that the [defendant] violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that 'no genuine issues of material fact' exist and that the defendant 'is entitled to judgment as a matter of law.'"[5]

To be "clearly established," a right must be defined with specificity, not generality.[6] So in the context of an excessive force claim, the plaintiff must demonstrate that "existing precedent [places] the lawfulness of the particular [conduct] beyond debate,"[7] which requires identifying "a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment."[8] This does not mean that a plaintiff must identify a case "directly on point" to block qualified immunity, and "there can be the rare 'obvious

---

[2] *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*); *see City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (*per curiam*).

[3] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[4] *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

[5] *Id*. (quoting *Gross v. Pirtle,* 245 F.3d 1151, 1156 (10th Cir. 2001)).

[6] *See City of Escondido*, 139 S. Ct. at 503; *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (internal quotation marks omitted).

[7] *Wesby*, 138 S. Ct. at 590 (internal quotation marks omitted).

[8] *City of Escondido*, 139 S. Ct. at 504 (citing *Wesby*, 138 S. Ct. at 581).

case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."[9] "But a body of relevant case law is usually necessary to clearly establish the answer. . . ."[10]

Against this backdrop, and resolving all factual disputes and reasonable inferences in the light most favorable to Plaintiff,[11] the Court concludes that the defendant officers are not entitled to summary judgment on the issue of their qualified immunity.

*Analysis*

The Court must first define "the circumstances with which [Officer Castlebury and Officer Grimes were] confronted."[12] Because of the summary judgment posture, the Court must accept Plaintiff's version of events as true, despite the officers' vigorous contesting of that version of events. And in so doing, the Court must evaluate whether Plaintiff's version of events, if true, describe a violation of Jerry Nowlin's constitutional right to be free of excessive force when being seized.

Plaintiff's version of events is as follows: Plaintiff does not dispute that Officer Castlebury and Officer Grimes observed Jerry Nowlin violate traffic laws and attempted to pull him over by turning on their lights. Jerry Nowlin did not pull over, and instead drove into the Prince Hall/Heritage Point apartment complex gate and then proceeded to flee from

---

[9] *Id*.

[10] *Id*. (citing *Wesby*, 138 S. Ct. at 581).

[11] Even in an analysis of qualified immunity, the Court must resolve all factual disputes and reasonable inference in the non-moving party's favor. *See Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

[12] *Anderson v. Creighton*, 483 U.S. at 640; *see Wesby*, 138 S. Ct. at 591.

the officers on foot. The officers pursued Jerry Nowlin as he ran through the apartment complex together at first, but then Officer Grimes broke away from Officer Castlebury. It is at this point that Plaintiff's version of events begins to diverge from Defendants' version of events. According to Plaintiff, Jerry Nowlin stopped running and had his hands up when Officer Castlebury shot three times at Jerry Nowlin, striking him at least once. According to Plaintiff, Officer Grimes then saw Jerry Nowlin and began to run towards him at full speed before drawing his weapon and firing seven shots at Jerry Nowlin, striking him at least once. Thus, according to Plaintiff's version of events, an unarmed Jerry Nowlin was shot in the back of the head and leg while he had his hands up.

To be sure, Defendants hotly dispute this version of events, arguing that Plaintiff's evidence—made up entirely of the testimony of purported eyewitnesses to the shooting— is so implausible and contradicted by the physical evidence that it should be disregarded. The Court, however, is not persuaded it can simply disregard evidence without having made a determination about the credibility of that evidence, and determinations of credibility are, of course, to be made by the fact finder at trial. Thus, regardless of the credibility of Plaintiff's evidence, that evidence must, at this stage, be taken at face value.

The question, therefore, is whether it was objectively reasonable for the officers to seize Nowlin by shooting him while his hands were up.[13][14] To analyze the objective reasonableness of the officers' actions, the Court turns to the three-factor test from *Graham* that balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[15] The *Graham* factors include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."[16]

### 1. Severity of Crime at Issue

The only crimes at issue, according to Plaintiff's version of events, are violating traffic laws and fleeing police. Jerry Nowlin's traffic violations include driving over the speed limit and making an illegal turn. Absent any indication that these traffic violations created some sort of unusual danger, they are quite minor crimes. Jerry Nowlin also fled police in his car and on foot. Oklahoma law classifies these crimes as misdemeanors in most circumstances[17] and according to Plaintiff's version of the facts, Jerry Nowlin did not

---

[13] *See Terry v. Ohio*, 392 U.S. 1, 20, (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010) ("[A] 'seizure' requires restraint of one's freedom of movement and includes apprehension or capture by deadly force.").

[14] *Graham v. Connor*, 490 U.S. 386, 388 (1989).

[15] *Id.* at 396 (internal quotation marks omitted).

[16] *Id*.

[17] *See* 21. O.S. § 540A (eluding police officer); 21. O.S. § 268 (resisting executive officer).

put anyone else in danger while committing these crimes. Again, absent more, Nowlin's act of running from the police is a relatively minor crime. Thus, the first *Graham* factor weighs in Plaintiff's favor.

## 2. Immediate Threat to Safety

Whether the suspect poses an immediate threat to the safety of the officers or others "is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force."[18] Since the officers used deadly force, their actions are only justified if each of them had "probable cause to believe that there was a *threat of serious physical harm to [himself] or others*."[19] To determine the degree of threat facing the officers, the following factors are relevant: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect."[20]

In determining whether Nowlin posed an immediate threat to the officers or others, it cannot be overlooked that the foot pursuit occurred in an area known for its crime and gang activity, and Nowlin was wearing clothing that the officers construed as indicating gang affiliation. Thus, this particular foot pursuit of a possible gang member, in a

---

[18] *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2650 (2018).

[19] *Estate if Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (internal quotation omitted).

[20] *Pauly*, 874 F.3d at 1216 (quoting *Estate of Larsen*, 511 F.3d at 1260).

dangerous neighborhood, through a poorly lit apartment complex known for its gang activity, was a foot pursuit that the officers could reasonably have thought was fraught with danger. It appears undisputed that Officer Castlebury and Officer Grimes did order Nowlin to stop. The officers claim Nowlin had a gun, but even under their version of events, the situation unfolded quickly and they did not order him to drop his weapon.[21][22] Plaintiff's version of events of course has Nowlin weaponless, so he couldn't have made any hostile motions with a weapon toward the officers.

It is unclear exactly how far away the officers were from Nowlin when shots were fired, but under either Plaintiff or Defendants' version of events, Nowlin was close enough to the officers to pose at least some threat to their safety, particularly given that the foot chase was a full speed running pursuit where distances could be quickly closed. Because Nowlin was running from the officers, the manifest intention of Nowlin was to escape the officers—not harm them. The officers of course claim that Nowlin pulled a gun and attempted to harm them in order to facilitate his escape, but again, Plaintiff's version of events has Nowlin unarmed. So nothing in Plaintiff's version of events indicates that Nowlin ever manifested an intent to harm the officers.

---

[21] *See* Mot. for Summ. J. of Defs. Christopher Grimes & Joshua Castlebury & Br. in Supp. (Dkt. 69) ¶ 6, at 5; Pl.'s Resp. in Opp. to Mot. for Summ. J. of Defs. Grimes & Castlebury (Dkt. 79) at 2.

[22] Thomas Depo 87:19–:25.

Based on these factors, if Plaintiff's version of events is true, Officers Castlebury and Officer Grimes were not justified in using deadly force against Nowlin because Nowlin did not present a threat of serious physical harm to the officers or others.

### 3. Resisting or Evading Arrest

It is undisputed that Jerry Nowlin was attempting to evade arrest by flight,[23] so the third *Graham* factor cuts in Defendants' favor.

Based on all this, and again, taking Plaintiff's hotly contested version of events as true, Jerry Nowlin was attempting to evade arrest by flight, but for crimes that were not serious, and without posing an immediate threat to the officers' safety or the safety of others. Under those facts, the officers' use of deadly force to seize Nowlin was unreasonable.

But this isn't the end of the matter. The Court must also determine whether existing precedent clearly established that this seizure was unreasonable. Plaintiff asserts that "[t]he law was clearly established in December of 2014 that a police officer did not have the right to shoot an unarmed man with his hands raised in the back of the head or in his leg."[24] Defendants do not contest this, but instead characterize Jerry Nowlin's actions as "an armed and attacking individual [that] turned and ran away."[25] But again, at this summary

---

[23] *See* Mot. for Summ. J. of Defs. Christopher Grimes & Joshua Castlebury & Br. in Supp. (Dkt. 69) ¶ 4, at 4; Pl.'s Resp. in Opp. to Mot. for Summ. J. of Defs. Grimes & Castlebury (Dkt. 79) at 2.

[24] Pl.'s Resp. in Opp. to Mot. for Summ. J. of Defs. Grimes & Castlebury (Dkt. 79) at 9.

[25] Mot. for Summ. J. of Defs. Christopher Grimes & Joshua Castlebury & Br. in Supp. (Dkt. 69) at 27.

stage, the Court must accept Plaintiff's version of events as true, and that being so, it was

clearly established at the time of this shooting that a seizure of this type was unreasonable.

Indeed, *Tennessee v. Garner* clearly establishes the rule that "[a] police officer may not

seize an unarmed, nondangerous suspect by shooting him dead."[26]

Since Plaintiff has satisfied her burden at this stage of the litigation, Officers

Castlebury and Grimes are not entitled to qualified immunity, so the Court must proceed

to analyzing the summary judgment motion under the typical Rule 56 standards.

## Summary Judgment
### Standard of Review

Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." In deciding whether summary judgment is proper,

the court does not weigh the evidence and determine the truth of the matter asserted, but

determines only whether there is a genuine dispute for trial before the fact-finder.[27] The

movant bears the initial burden of demonstrating the absence of a genuine, material dispute

and an entitlement to judgment.[28] A fact is "material" if, under the substantive law, it is

---

[26] *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

essential to the proper disposition of the claim.[29] A dispute is "genuine" if there is sufficient

evidence on each side so that a rational trier of fact could resolve the issue either way.[30]

If the movant carries the initial burden, the nonmovant must then assert that a

material fact is genuinely in dispute and must support the assertion by "citing to particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials"; by "showing that

the materials cited [in the movant's motion] do not establish the absence . . . of a genuine

dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce

admissible evidence to support the fact."[31] The nonmovant does not meet its burden by

"simply show[ing] there is some metaphysical doubt as to the material facts,"[32] or by

theorizing a "plausible scenario" in support of its claims.[33] "Rather, 'the relevant inquiry

is whether the evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law.'"[34] If there is a

---

[29] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[30] *Id.*

[31] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[32] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

[33] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[34] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[35]

*Analysis*

For many of the same reasons discussed in the qualified immunity analysis, summary judgment is not proper due to the fact that Plaintiff and Defendants have presented evidence describing a significantly different version of the relevant event.

The *un*disputed material facts are essentially as follows: Officer Castlebury and Officer Grimes, Oklahoma City police officers, were patrolling on December 7, 2014, when they observed Jerry Nowlin violate traffic laws. The officers attempted to pull Jerry Nowlin over, but he did not stop driving. He instead bailed out of his vehicle while it was still moving near an apartment complex and began running into the complex. The officers pursued Jerry Nowlin. During this pursuit, both Officer Castlebury and Officer Grimes fired multiple gunshots at Jerry Nowlin. Two of these shots struck Jerry Nowlin, one in the leg and one in the head. He eventually succumbed to his injuries. A plastic bag of marijuana, digital scales, Nowlin's cell phone and shoe, and a gun were found at the scene.

Significant factual disputes exist, however, with respect to facts critical to the Court's assessment of the objective reasonableness of the officers' actions. First, a genuine dispute exists as to whether Jerry Nowlin had his hands up during the relevant pursuit and

---

[35] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

right before he was shot. Defendants cite their own deposition testimony to support their position that Jerry Nowlin "never raised his hands, or made any attempt to surrender."[36] Plaintiff, on the other hand, disputes Defendants' position, and cites the depositions of three lay witnesses and the report of her expert witness to support her position that Jerry Nowlin's hands were raised when he was shot.[37] Whether Jerry Nowlin had his hands up is material to the excessive force claim because it impacts the objective reasonableness of the officers' use of deadly force, namely whether and to what extent Jerry Nowlin was an immediate threat to the officers' safety.[38] This conflicting testimony creates a genuine issue of a material fact.

Second, a genuine dispute exists as to whether Jerry Nowlin had a gun. Stemming from this material fact is another, whether Jerry Nowlin pointed a gun at Officer Castlebury. The presence of a gun is a material fact because it directly impacts the objective

---

[36] Mot. for Summ. J. of Defs. Christopher Grimes & Joshua Castlebury & Br. in Supp. (Dkt. 69) ¶ 15, at 8 (citing Grimes Depo. (Dkt. 69-1) at 46; Castlebury Depo. (Dkt. 69-2) at 47).

[37] Pl.'s Resp. in Opp. to Mot. for Summ. J. of Defs. Grimes & Castlebury (Dkt. 79) at 3; Bagby Depo. 82:17 ("A: He put his hands up . . . "); Sanders Depo. 87:19–:20 ("A: Jerry Nowlin was standing at the end of the sidewalk with his hands up."); 94, lines 7-9 ("Q: Where was [Jerry Nowlin] before they shot him? A: Standing, standing up with his back to them with his hands up."); 87:17–:18 ("Q: And how was he standing? A: Just standing there with his hands up."); Thomas Depo. 87:25–88:1 ("A: He stopped right here and had his hands up."); 97:6–:8 ("Q: He's standing there and you're saying he's got his hands up? A: Yes."); 113:2–:7 ("A: He was standing right here with his hands up . . . I seen him with his hands up."); 132:19–:20 ("A: When I seen him last, his hands was up."); Report of Michael Lyman (Dkt. 4-1) (report concluding Officer Grimes and Officer Castlebury used excessive force).

[38] *See, e.g. McCarty v. Gatz*, No. 07-15460, 2009 WL 1664462, at *9 (E.D. Mich. June 15, 2009) (denying qualified immunity to officers who, under Plaintiff's version of events, shot an armed robber who was backing away from them with his hands in the air).

reasonableness of the officers' use of deadly force, as it unquestionably increases the threat

confronting the officers.[39] Defendants claim that Jerry Nowlin had a gun and pointed it at

Officer Castlebury. In support, they cite the testimony of Officer Castlebury.[40] Plaintiff

disputes these material facts by citing the testimony of three lay witnesses and her expert

witness.[41] This conflicting testimony creates yet another genuine issue of material fact.

---

[39] *See, e.g., Rosales v. City of Phoenix*, 202 F. Supp. 2d 1055, 1060 (D. Ariz. 1999), *aff'd*, 25 F. App'x 582 (9th Cir. 2001) (denying summary judgment on excessive force claims where a genuine issue of material fact exists as to whether the Plaintiff pointed a gun at the officers).

[40] Mot. for Summ. J. of Defs. Christopher Grimes & Joshua Castlebury & Br. in Supp. (Dkt. 69) ¶ 8, at 6 (citing Castlebury Depo. (Dkt. 69-2) at 35–42).

[41] Pl.'s Resp. in Opp. to Mot. for Summ. J. of Defs. Grimes & Castlebury (Dkt. 79) at 2; Bagby Depo. 82:10–:12 ("Q: Do you know if he had a gun? A: I know he didn't have a gun on him when he was running like they said he did."); Sanders Depo. 131:2–:3 ("Q: Did you ever see Mr. Nowlin with a gun? A: No."); 131:4–:6 ("Q: Did you ever see Mr. Nowlin point a gun at the officers? A: No."); 131:7–:9 ("Q: Did you ever see Mr. Nowlin point a gun at the officers and then run from them? A: No."); 131:10–:12 ("Q: Did you ever see that Mr. Nowlin pulled the trigger and it just didn't fire? A: No."); 98:23–:25 ("Q: Could you tell if Jerry had anything in his hands? A: No. I didn't see anything in his hands."); Thomas Depo. 97:9–:12 ("Q: Anything in his hands? A: No. Q: Was he carrying anything? A: No."); 132:19 ("A: He didn't have a gun."); 132:20–:24 ("A: But you could see like his jacket was open, there was no gun. How fast he was running, there was no way that any gun, unless you had it in a holster, could have stayed on him. He was running like a lightning flash."); Lyman Depo. 94:10–:25 ("Q: [Y]ou're saying that they said they weren't 100 percent sure even though they described it as a weapon? A: Grimes said he was not 100 percent sure, and Castlebury said he initially saw a dark object in Nowlin's hand, then he modified his statement in his deposition to say that he believed it was a gun initially. But the physical evidence as well, in my opinion, is pretty straightforward in that you've got Mr. Nowlin with a shot to the head lying in one location, and he's clearly unarmed, the weapon is approximately 40 feet away, and it's not even known with certainty if that's a weapon that he ever possessed. It could have been. It may not have been."); 95:1–:10 ("Q: And I'm looking for any factual basis for you to say that it was not in his possession besides pure speculation. A: Physical evidence. Q: And you really think that that gun was just lying there by chance in that debris field at night? A: I don't know. But what I do know is that he was not in possession of that gun, that's my understanding, at the time he was shot in the head.").

Third, a genuine dispute exists as to whether Officer Castlebury saw Jerry Nowlin point a gun or something that looked like a gun at him. Defendants rely on the testimony of Officer Castlebury, while Plaintiff points to the testimony of lay witnesses that Jerry Nowlin had his hands up and did not have a gun.[42] Based on this evidence, a reasonable factfinder could conclude that Officer Castlebury could not have seen Jerry Nowlin point a gun or something that looked like a gun at him because he had his hands up and did not have a gun. This fact is material to whether and to what extent Jerry Nowlin was an immediate threat to Officer Castlebury's safety.

Fourth and finally, a genuine dispute exists as to whether Officer Grimes saw Jerry Nowlin pointing a gun or something that looked like a gun at Officer Castlebury. Again, the testimony of lay witnesses that Jerry Nowlin was unarmed and had his hands up could lead a reasonable factfinder to conclude that Officer Grimes could not have seen Jerry Nowlin point a gun or something that looked like a gun at his partner.[43] This fact is material to whether and to what extent Jerry Nowlin was an immediate threat to Officer Grimes' safety.

The Court again notes that Defendants attempt to show the improbability or impossibility of the testimony of lay witnesses relied on by Plaintiff.[44] To be sure, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the

---

[42] *See* supra n. 37, 41.

[43] *See id.*

[44] *See* Mot. for Summ. J. of Defs. Christopher Grimes & Joshua Castlebury & Br. in Supp. (Dkt. 69) at 22–32.

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[45] This standard, however, "is a very difficult one to satisfy,"[46] and is satisfied only when "all evidence points to [a] contrary conclusion."[47] This exacting standard cannot be satisfied in a case like this, where the bulk of the evidence is made of eyewitness accounts of what happened. There is no video evidence, and the audio of the officers' radio calls only sheds light on the time elapsed from the start of the chase to the gunshots—it does not tell us whether Nowlin had a gun, pointed a gun, or had his hands up when shot.[48] In other words, there simply isn't enough objective evidence in this case to say that Plaintiff's version of events is "blatantly contradicted" by all evidence in this case. Thus, whether the testimony of Plaintiff's witnesses is to be believed is for the factfinder to decide.

As a result, viewing the current record and all reasonable inferences in Plaintiff's favor, genuine issues of material fact exist. Defendants Castlebury and Grimes' Motion for Summary Judgment (Dkt. 69) is therefore **DENIED**.

---

[45] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[46] *Cordero v. Froats*, 613 F. App'x 768, 769 (10th Cir. 2015).

[47] *Vernon v. Dickson*, No. 16-6299, 2017 WL 2703531, at *2 (10th Cir. June 22, 2017) (citing *Henderson v. Glanz*, 813 F.3d 938, 950-51 (10th Cir. 2015)).

[48] *See McCalister v. Oklahoma City Police Dep't*, No. CV-15-1282-HE, 2017 WL 9292188, at *7 (W.D. Okla. Oct. 25, 2017), *report and recommendation adopted*, No. CIV-15-1282-HE, 2018 WL 278742 (W.D. Okla. Jan. 3, 2018).

**IT IS SO ORDERED** this 20th day of March, 2020.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE